IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PALINODE, LLC, ) | |
| ) | |
| Plaintiff, ) | NO. 3:20-cv-00807 |
| ) | JUDGE RICHARDSON |
| v. ) | |
| ) | |
| PLAZA SERVICES, LLC and PROVANA, ) | |
| LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

# MEMORANDUM OPINION

Pending before the Court are two motions. Defendant Provana filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). (Doc. No. 31). Defendant Plaza Services, LLC filed a "motion to Transfer Venue and/or Dismiss," wherein it moves to transfer venue pursuant to 28 U.S.C. § 1404, or, in the alternative, to dismiss under Rule 12(b)(6). (Doc. No. 36, "Defendant Plaza's Motion"). Plaintiff Palinode, LLC, filed a single response to each of these motions. (Doc. No. 48, "Response"). Defendant Provana filed a Reply, (Doc. No. 54) as did Defendant Plaza Services. (Doc. No. 55). Plaintiff filed a Sur-Reply to Defendant's Plaza's Reply. (Doc. No. 59). Defendant Provana joined Plaintiff's Sur-Reply. (Doc. No. 61).

## BACKGROUND[1]

Plaintiff is a Tennessee company that created proprietary credit dispute investigation software. (Doc. No. 25 at 2-3, "Software"). Plaintiff protected the Software by limiting access

---

[1] Relevant facts come from the Amended Complaint. (Doc. No. 25). The Amended Complaint is the operative complaint in this matter. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). The facts alleged in the Amended Complaint are not currently disputed, so

through a combination of usernames/passwords, two-factor authentication, and whitelisting IP addresses. (*Id.* at 2). Defendant Plaza is an accounts receivables portfolio firm based in Georgia. (*Id.*). On May 6, 2019, Plaintiff and Defendant Plaza Services entered into a Software-as-a-Service Customer Agreement ("Agreement"), which allowed Plaza to use Plaintiff's software to manage consumer credit disputes. (*Id.*). In relevant part, the Agreement gave Plaintiff all rights, titles, and interest in the Software. (*Id.* at 4). It also barred Plaza from sharing confidential information with any unauthorized party. (*Id.*).

In August or September 2020, Plaintiff discovered Plaza had shared access to the Software with Defendant Provana. (*Id.* at 7). Provana is an Illinois-based company that offers services in direct competition with Plaintiff. (*Id.* at 2). Plaza provided the following Plaza-employee email address—kshakya@plazaservicesllc.com—to a Provana-affiliate. (*Id.* at 6). Plaintiff relied on Plaza's representation that this person was a Plaza employee, and whitelisted their IP address, giving them access to the Software. (*Id.*). Plaintiff later found out the whitelisted IP address was registered as a VPN portal for Provana. (*Id.* at 7). This user accessed the Software hundreds of times between February and August of 2020, spending twice as much time in the Software as other Plaza employees with access. (*Id.* at 6, 8).

---

the Court can rely on them not only to resolve each Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6), but also to resolve the Motion to Transfer Venue under 28 U.S.C. § 1404. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true . . ."); *see also Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 877, n.3 (M.D. Tenn. 2019) (noting courts can consider facts outside of the pleadings to resolve a motion to transfer, but must draw all reasonable inferences in favor of the plaintiffs) (citing *U.S. v. Gonzales & Gonzales Bonds and Ins. Agency, Inc.*, 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010))).

Plaintiff sent Plaza and Provana cease-and-desist letters and terminated the agreement on September 1, 2020. (*Id.* at 7). Plaintiff then commenced this action in the Chancery Court of Williamson County, bringing the following claims:

   I. Breach of Contract against Plaza
  II. Fraud and Deceit against Plaza and Provana
 III. Interference with Business and Contractual Relations and Prospective Business Relations against Plaza and Provana
  IV. Inducement of Breach of Contract against Provana
   V. Unfair Competition against Plaza and Provana
  VI. Civil Conspiracy against Plaza and Provana

Defendants removed the action to Federal Court on September 18, 2020. (Doc. No. 1). On October 14, 2020, Plaintiff filed an Amended Complaint which amended Claim III to be against Provana only and added two additional claims—of Violations of the Tennessee Personal and Commercial Computer Act of 2003 ("TPCCA") and Negligence Per Se—against both Defendants. (Doc. No. 25 at 12, 15, and 17).

## MOTION TO TRANSFER VENUE STANDARD

The Court will first review Defendant Plaza's Motion to Transfer Venue, as the outcome is determinative of whether the Court need consider the other Motions to Dismiss. The standard for transfer of venue is found in Section 1404, which provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *TailGate Beer, LLC v. Boulevard Brewing Co.*, No. 3:18-cv-00563, 2019 WL 2366948, at *7 (M.D. Tenn. June 5, 2019). "The burden rests with the moving party to establish that venue should be transferred." *Winnett v. Caterpillar, Inc.*, 3:06–cv–00235, 2006 WL 1722434, *2 (M.D. Tenn. June 20, 2006). Unless the balance is strongly in favor of the defendant, a plaintiff's choice of forum should rarely

3

be disturbed. *TailGate Beer, LLC*, 2019 WL 2366948, at *7. A defendant must make a clear and convincing showing that the balance of convenience strongly favors the alternate forum. *Id.*

In reviewing a motion to transfer, a court balances case-specific factors, including the private interests of the parties[2] and public-interest concerns,[3] such as systemic integrity and fairness. *Id.*; *see also Ingram Barge Co., LLC v. Bunge N. Am., Inc.*, 455 F. Supp. 3d 558, 569 (M.D. Tenn. 2020). A district court "has broad discretion to grant or deny a motion to transfer [a] case." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994), cited in *Sardeye v. Wal-Mart Stores East, LP*, Case No. 3:18-cv-01261, 2019 WL 4276990, at *3 (M.D. Tenn. Sept. 10, 2019).

"Although a plaintiff's choice of forum is generally given deference, that choice may be defeated . . . ." *Harris v. Parker*, No. 3:20-cv-01110, 2021 WL 229651, at *3 (M.D. Tenn. Jan. 22, 2021). One way in which the choice of forum can be defeated is by an enforceable forum-selection clause in a contract between the parties. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59–60 (2013) ("*Atlantic Marine*"). That is to say, a forum-selection clause "may be enforced through a motion to transfer under § 1404(a)." *Id.* at 59. "Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Id.*

When a court determines that there is a valid selection clause, the court should shift the traditional § 1404(a) analysis as directed by the Court in *Atlantic Marine*, as will be discussed in more detail below.

---

[2] Private interests include location of willing and unwilling witnesses, residence of the parties, location of sources of proof, location of the events that gave rise to the dispute, systemic integrity and fairness, and plaintiff's choice of forum. *Tailgate Beer*, 2019 WL 2366948, at *7.

[3] Public interests include enforceability of the judgment, practical considerations affecting trial management, docket congestion, local interest in deciding local controversies at home, and familiarity of the trial judge with the applicable state law. *Tailgate Beer*, 2019 WL 2366948, at *7.

4

**DISCUSSION**

Defendant Plaza Services argues this action should be transferred to the District of Delaware pursuant to the forum-selection clause contained in the Agreement between itself and Plaintiff.[4] (Doc. No. 36-1 at 2-4). Plaintiff disagrees, arguing that the Agreement's forum-selection clause is not applicable to Defendant Provana and severing the claims would "result in two virtually identical lawsuits proceeding in two separate fora, which would be incredibly inefficient and wasteful." (Doc. No. 48 at 6-7).

A. Forum-selection clause validity and enforceability

"A forum selection clause is presumptively valid and enforceable." *Ricketts v. hybris AG*, No. 1:15 CV 277, 2015 WL 13679481, at *3 (N.D. Ohio June 19, 2015) (citing *Smith v. Aegon Companies Pension Plan*, 769 F.3d 922, 930 (6th Cir. 2014)). The party opposing the application of the clause bears the burden of overcoming that presumption, i.e., showing that the clause is either invalid, unenforceable, or both.[5] *Id.* In the present action, Plaintiff makes no argument that the Agreement's forum-selection clause is either invalid or unenforceable. In fact, Plaintiff's only argument against honoring the forum-selection clause rests on the inclusion of Provana as a Defendant in the case—*i.e.*, that the forum-selection clause should prevail here, given that one of the parties was not a party to it. Thus, the Court will treat the Agreement's forum-selection clause

---

[4] The forum-selection clause in the Agreement reads as follows: "This Agreement is governed by the laws of the State of Delaware, and all actions shall be brought exclusively in the state or federal courts in the State of Delaware." (Doc. No. 36-2 at 6).

[5] Although it may not seem immediately apparent that "validity" and "enforceability" are distinguishable in this context, some courts (though not the Sixth Circuit) recognize them as two separate things, each of which can be challenged by a party opposing applicability of a forum-selection clause. *See, e.g.*, *BlueDane, LLC v. Bandura Cyber, Inc.*, No. 3:20-CV-00553, 2021 WL 2869154, at *3–4 (M.D. Tenn. July 7, 2021). The Court here will forgo a discussion of the perceived distinction between the two, as no challenge has been made to either.

5

as valid and enforceable, then determine whether it nevertheless for some reason should give way to Plaintiff's original selection of venue.[6]

B. Venue analysis

The Court has discussed above, in the Motion to Transfer Venue Standard section, the typical § 1404(a) analysis conducted when determining whether changing venue is appropriate. However, when there is an enforceable forum-selection clause (which is undisputed here), the calculus changes. The Court has previously explained:

> Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." With this statute, "Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002). However, this discretion is limited significantly when a valid forum-selection clause governs the parties' dispute. In *Atlantic Marine Construction Company v. United States District Court for the Western District of Texas*, 134 S. Ct. 568 (2013), the Supreme Court explained that "[t]he calculus changes ... when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* at 581 (internal citations omitted).
>
> *Atlantic Marine* directs that district courts may not consider the plaintiff's choice of forum or private interests when a valid forum-selection clause is present. *Id.* at 581–82. "As a consequence, a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the

---

[6] The Court also notes that there are two types of forum-selection clauses, permissive and mandatory. In the Sixth Circuit, the inclusion of the word "shall" in a forum-selection clause makes the clause mandatory, rather than permissive. *See Holtzman v. Vill. Green Mgmt. Co. LLC*, No. 2:19-CV-11150, 2020 WL 264331, at *10 (E.D. Mich. Jan. 17, 2020) (citing *Gen. Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994) ("Because the clause states that 'all' disputes 'shall' be at [Defendant's] principal place of business, it selects German court jurisdiction exclusively and is mandatory")). Thus, the Agreement's forum-selection clause here is mandatory.

practical result is that forum-selection clauses should control except in unusual cases." *Id.* (internal citations omitted).

*Showhomes Franchise Corp. v. LEB Sols.*, LLC, No. 3:17-CV-00508, 2017 WL 3674853, at *2 (M.D. Tenn. Aug. 24, 2017); *see also Hildebrand v. Optimal Mortg. Servs.*, LLC, No. 3-16-0618, 2016 WL 3258418, at *2 (M.D. Tenn. June 14, 2016).

*Atlantic Marine* requires a Court to make three adjustments to a § 1404 transfer analysis when a valid and enforceable forum-selection clause is present:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted . . . Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation . . . Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations.

571 U.S. at 63-64. Plaintiff urges the Court to adopt the approach of the Third and Fifth Circuits, which adjust *Atlantic Marine*'s framework when a non-signatory to a forum-selection clause is a party to a case. In that scenario, the Third and Fifth Circuits take into consideration the private interests of the non-signatory.[7] However, as Plaintiff acknowledges, the Sixth Circuit has never utilized this approach, and the Court is not persuaded to do so presently. *See Holtzman*, 2020 WL

---

[7] *See In re: Howmedica Osteonics Corp.*, 867 F.3d 390, 403-04 (3d Cir. 2017) ("Building on *Rolls Royce*, we prescribe a four-step inquiry in which the reviewing court, whether the District Court in the first instance, or this Court on appeal, will consider in sequence: (1) the forum-selection clauses, (2) the private and public interests relevant to non-contracting parties, (3) threshold issues related to severance, and (4) which transfer decision most promotes efficiency while minimizing prejudice to non-contracting parties' private interests.") (citing *In re Rolls Royce Corp.*, 775 F.3d 671, 681 (5th Cir. 2014) (finding that "the district court must consider the private factors of the parties who have not signed a forum selection agreement")).

7

264331 at *11 (noting the Court is "not aware of any courts in the Sixth Circuit that have followed [the Third and Fifth Circuits'] line of thinking.").

With that in mind, the Court will proceed to a review of the relevant public-interest factors in this case. Factors relating to the public interest "include the enforceability of the judgment, practical considerations affecting trial management, docket congestion, local interest in deciding local controversies at home, public policies of the fora, and familiarity of the trial judge with the applicable state law." *Sacklow*, 377 F. Supp. at 877.[8] The party flouting a forum-selection clause "must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atlantic Marine*, 571 U.S. at 67. In this action, as the party violating a forum-selection clause, Plaintiff must show how public-interest factors disfavor the transfer of this case to the District of Delaware. Plaintiff argues that transferring the lawsuit to Delaware would "be inefficient because there is no evidence [there], nor do any witnesses reside there." (Doc. No. 48 at 11). Additionally, Plaintiff argues that "judicial economy" weighs against transferring the case because it would

---

[8] The undersigned here will reiterate what he has said previously about multi-factor tests generally:

> The undersigned has noted on multiple occasions that multi-factor (or balancing) tests, though often having considerable desirability and merit, tend to foster outcomes that are unpredictable on the front end, given such tests' subjectivity." *Memphis A. Phillip Randolph Inst. v. Hargett*, No. 3:20-CV-00374, 2020 WL 5095459, at *16 (M.D. Tenn. Aug. 28, 2020) (quoting Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1050 (1997) (proposing a multi-factor test to resolve civil limitations issues, while conceding that when courts "apply[ ] a multi-factor test, [it is] always an unpredictable endeavor") and Eli J. Richardson, *Taking Issue with Issue Preclusion: Reinventing Collateral Estoppel*, 65 Miss. L.J. 41, 95 (1995) (proposing multi-factor test to resolve collateral estoppel issues, while conceding that its drawback is that it "would produce unpredictable resolutions of collateral estoppel issues, in that it is so flexible and calls for very subjective judicial determinations")).

*Acosta v. Peregrino*, No. 3:17-CV-01381, 2020 WL 5995049, at *6 (M.D. Tenn. Oct. 9, 2020).

easier for Tennessee to apply Delaware law to the requisite claims involving Plaza than it would be for Delaware to "hear a case that (a) involves questions of Tennessee law; (b) is based on conduct that took place in Tennessee, Georgia, and India; and (c) depends on evidence and witnesses located in Tennessee, Georgia, and India." (*Id.*). Finally, Plaintiff argues that severing the claims against Palinode and Plaza would result in two "substantially duplicative proceedings" in Delaware and Tennessee and be "a manifest waste of resources." (*Id.* at 11-13).

The Court is not swayed that the public-interest factors weigh against transferring of this case. In addition to a forum-selection clause, the Agreement contained a choice-of-law provision that requires Delaware law to govern any contractual dispute between Plaintiff and Plaza. (Doc. No. 32-6). So if the case were transferred to Delaware, Delaware courts may have to apply Tennessee law to resolve some of the claims, such as the TPCCA violation claim, but this Court may also have to apply Delaware law to resolve any claims deemed governed by the Agreement's choice-of-law clause.[9] Additionally, Plaintiff's arguments related to the location of witnesses and evidence are actually private-interest factors Plaintiff sneaks in under the guise of "judicial economy" and are not subject to consideration.[10] Plaintiff's final argument, related to "substantially duplicative proceedings" if the case was severed, is also unpersuasive for reasons discussed below.

---

[9] Whether a Delaware court would have to apply Tennessee law, and whether a Tennessee court would have to apply Delaware law, depends on the outcome of the court's choice-of-law analysis and on the extent to which the Court (based on such outcome) would give effect to the choice-of-law clause contained in the Agreement. At present, the Court declines to conduct a full choice-of-law analysis in this case, as the Plaintiff fails to prove that public-interest factors "overwhelmingly disfavor" transferring the case even if Delaware would have to apply Tennessee law to every claim. *See Atlantic Marine*, 571 U.S. at 67.

[10] *See supra* note 2.

C. Application of forum-selection clause to Defendant Provana, LLC

Plaintiff argues,[11] "Palinode and Provana did not bargain for any forum-selection clause, and the clause in the SAAS Agreement between Palinode and *Plaza* should not dictate where Palinode is permitted to sue *Provana*." (Doc. No. 48 at 11) (emphasis in original). This is a misstatement of the present situation. A grant of Defendant Plaza's motion to transfer venue in accordance with a valid forum-selection clause would not amount to the forum-selection clause "dictat[ing]" where Plaintiff can sue Defendant Provana. Instead, Defendant Plaza is merely enforcing the Agreement between itself and Plaintiff. Defendant Plaza did not choose to include Defendant Provana as a co-defendant, and Plaintiff has not explained why it can deny Defendant Plaza the contractual benefit of its bargain with Plaintiff by the simple expedient of naming a co-defendant who was not a party to the contract. The issue here is whether Plaintiff should be compelled to try its case against Defendant Plaza in Delaware. If the answer is yes, the claims involving Defendant Plaza's co-defendant (Defendant Provana) also go to Delaware unless or until they are severed.[12]

Defendant Provana's disagreement with Delaware as the forum is irrelevant on the instant motion to transfer venue. That is not to deny that at some *later* juncture, Provana's opposition to a Delaware forum may prove consequential. If the case were transferred to Delaware, and if Provana has grounds to sever and transfer venue over the severed case back to Tennessee, or to

---

[11] As mentioned previously, Plaintiff filed a Sur-Reply to Defendant Plaza's Reply Brief in Support of its Motion to Transfer Venue, in which Plaintiff argues Provana should not be compelled to try this case in Delaware. (Doc. No. 59). Defendant Provana joined Plaintiff's Sur-Reply to the extent that it states, "Provana . . . should not be subject to transfer of this action to Delaware." (Doc. No. 61).

[12] Plaintiff makes references to severance of the claims throughout its Response to the Motions and its Sur-Reply to Defendant Plaza. (Doc. No. 48, 59). However, no party has filed a Motion to Sever in this case, so the Court will not consider whether such an action would be appropriate.

contest a Delaware court's personal jurisdiction over it,[13] it may assert those grounds in an attempt to avoid litigating in Delaware. But for now, the question is whether the forum-selection clause dictates that Plaintiff's claims against Defendant Plaza go to Delaware—in which case Defendant Provana is stuck for the time being with going to Delaware by virtue of Plaintiff's choice to name it as a co-defendant.

The Court acknowledges there is Sixth Circuit case law suggesting a forum-selection clause can bind or be invoked by non-signatories only if they are "closely related" to the contract that contains the clause.[14] However, the case law focuses on dissimilar scenarios—like a non-signatory defendant attempting to enforce a forum selection clause against a signatory Plaintiff—and is not probative in this case, in which a plaintiff seeks to avoid transfer pursuant to a forum-selection clause based on its inclusion of a non-signatory who also wishes to avoid the effects of the forum-selection clause.[15] The Court could find no case law stating that the absence of the

---

[13] The Court notes that any such potential claim of lack of personal jurisdiction conceivably would prove to be without merit, since Provana is an LLC organized in Delaware. The Court notes in passing that by organizing under Delaware law, Provana arguably "bargained" (albeit not specifically with Plaintiff or its co-Defendant) that it could eventually be forced to litigate in Delaware courts. (Doc. No. 25 at 2).

[14] Plaintiff asserts in its Sur-Reply that Defendant Plaza was not permitted to make the argument that Provana was "closely related" to the Agreement for the first time in its Reply Brief. However, because the Court does not find the "closely related" framework applicable to this case, it does not need to consider whether this argument was appropriately included within Defendant Plaza's Reply Brief.

[15] *See e.g. Smith & Nephew, Inc. v. Nw. Ortho Plus, Inc.*, No. 12-CV-02476-JPM-DKV, 2012 WL 13027488, at *9 (W.D. Tenn. Aug. 23, 2012) (finding plaintiff could not enforce a forum-selection clause against two non-signatory defendants who were not "closely related"); *Villanueva v. Barcroft*, 822 F. Supp. 2d. 726, 738 (N.D. Ohio Sept. 30, 2011) (finding a "closely related" defendant could invoke a forum-selection clause contained in an agreement despite never having signed the agreement); *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 WL 908753, at *5 (M.D. Tenn. Mar. 12, 2010) (finding a signatory defendant could transfer venue,

aforementioned "close relat[ionship]" precludes it from transferring venue of all claims (and for all parties) in a situation where the plaintiff and one defendant are both signatories to a valid forum-selection clause, but the plaintiff and a non-signatory co-defendant challenge the transfer on the sole basis of the non-signatory defendant's presence in the case. In fact, one district court in this circuit acknowledged the risk of such an approach, saying, "[A]llowing bifurcation of [Plaintiff's] claims would set a dangerous precedent that could result in forum-shopping. Future plaintiffs could simply avoid a valid forum-selection clause by naming a defendant, closely related to the contractual relationship or dispute, but who is not a signatory or third-party beneficiary." *Reagan v. Maquet Cardiovascular U.S. Sales LLC*, No. 1:14CV548, 2015 WL 521049, at *4 (N.D. Ohio Feb. 9, 2015); *see also Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 329 (6th Cir. 2019) (holding that parties should not be allowed to avoid an enforceable forum-selection by "suing an affiliate of the other signatory of the [ ] agreement [with the forum-selection clause], to litigate them [in a different forum] instead.") (quoting *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 440 (7th Cir. 2012)).

Plaintiff repeatedly argues that transferring the case to Delaware "would unfairly subject" Defendant Provana to a forum it "did not bargain for." (Doc. No. 48 at 12). But to some extent Defendant Provana *did* bargain for defending cases in Delaware, inasmuch as it organized itself under the laws of Delaware. And in any event, any such alleged unfairness would be the result of *Plaintiff* '*s* actions in naming Defendant Provana as a co-defendant with a defendant who *did* bargain for a Delaware forum.

---

pursuant to a forum-selection clause, of a case involving a "closely related" non-signatory plaintiff).

Setting aside the irony of Plaintiff gallantly taking up the cause of a party it has haled into court as an alleged wrongdoer, the Court notes that if Defendant Provana feels aggrieved by such alleged unfairness, Defendant Provana can raise it with the Delaware court by a motion to sever and transfer or to dismiss for lack of personal jurisdiction.

The Court also notes that defendants quite commonly are stuck (properly) in venues that they did not "bargain for," because the venue is appropriate even if the defendant did not bargain for it. The determination of a proper venue (or, on motions to transfer, the *better* of two proper venues) turns on whether a venue is proper under the law (or, on motions to transfer, proper as well as preferrable under 28 U.S.C. §1404(a)), not whether one co-defendant bargained for litigating in that location. There appears to be no question that Plaintiff could have brought this action in Delaware pursuant to the forum-selection clause in the Agreement.[16] And had Plaintiff filed suit in the District of Delaware originally, it seems inconceivable that Defendant Provana would have gained any traction whatsoever in arguing that venue should be transferred from Delaware based on such venue being "unfair" to Defendant Provana; Defendant Provana presumptively would have been stuck there, regardless of its preference for litigating in the Middle District of Tennessee. The Court does not see how concerns of fairness to Provana should defeat *transfer* to Delaware when they clearly would not have defeated original venue there.

Because the Court finds Plaintiff failed to prove "public-interest factors overwhelmingly disfavor a transfer," the Court finds the forum-selection clause should be enforced and the case should be transferred to Delaware. *Atlantic Marine*, 571 U.S. at 67. And because no party has

---

[16] As noted above, it appears likely that no personal-jurisdiction concerns would have prevented Plaintiff from bringing claims against Provana in Delaware, since Provana is an LLC organized in Delaware. (Doc. No. 25 at 2).

moved to sever any claims, the entire case will be transferred, including Plaintiff's claims against Defendant Provana.

## **CONCLUSION**

For the reasons discussed herein, the Court will grant Defendant Plaza's Motion (Doc. No. 36), by ordering the transfer of this case to the United States District Court for the District of Delaware. Because the Court will thus grant the primary relief sought in Defendant Plaza's Motion, and because Defendant Plaza requested the alternative relief (dismissal pursuant to 12(b)(6)) only "in the event the Court does not transfer venue," (Doc. No. 36-1 at 14) it is unclear whether its request for dismissal pursuant to Rule 12(b)(6) should be deemed to survive the granting of Defendant Plaza's Motion. The Court will leave such matters to the transferee court. Defendant Provana's Motion to Dismiss (Doc. No. 31) will remain pending in the transferee court, subject to further order of the transferee court.

An appropriate order will be entered.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE